PER CURIAM.
¶1 Jerry A. Quinn, Jr., appeals from a judgment of conviction and an order denying his postconviction motion seeking a new trial based on newly discovered evidence or, in the alternative, due to the ineffective assistance of trial counsel.[1] For the reasons that follow, we affirm.
BACKGROUND
¶2 Nadine Rothering died of a heroin overdose on August 21, 2014. Quinn was charged with first-degree reckless homicide on the theory that he delivered the fatal heroin to Abbey Miller, who then delivered it to Rothering. Quinn waived his right to a jury trial and the matter was tried to the court.
¶3 At trial, Miller identified Quinn as the person from whom she "used to buy drugs." She testified that she purchased heroin twice from Quinn on August 21, 2014. The first time, Monica Sanchez drove Miller to meet Quinn at a truck stop in Cedar Grove. Miller got into Quinn's car, gave him money, and received heroin.
¶4 Miller had arranged to sell some of the heroin to Rothering. At around 2:30 p.m., Sanchez drove Miller to Sheboygan, where they met Rothering in the parking lot of a Citgo gas station. Miller and Sanchez testified that Rothering got into Sanchez's jeep, where Miller sold her some of the heroin she had purchased from Quinn. Miller warned Rothering to "be careful with it because it was strong." Surveillance video from the Citgo showed Rothering walking toward Sanchez's jeep and getting inside.
¶5 Sanchez and Miller testified that they left the Citgo and were on their way to drop Rothering off at her boyfriend's apartment when Quinn called Miller. The three women returned to the parking lot so that Miller could buy more heroin from Quinn. Consistent with their testimony, the surveillance video captured Sanchez's jeep leaving the parking lot and returning minutes later, at about the same time Quinn's car pulled in. The video showed Miller get out of Sanchez's jeep and get into Quinn's car. After Miller got back into Sanchez's jeep, they dropped Rothering off at her boyfriend's apartment.
¶6 Rothering's boyfriend testified that on August 21, Rothering "made a couple phone calls" looking for heroin and then left the house between two and three in the afternoon. She returned with heroin, injected it, and "instantly nodded out." The boyfriend left the apartment and returned around midnight. Rothering was not breathing and he called 911. The responding officer found Rothering deceased. Miller's phone number was written on her hand, and records showed that Rothering had called Miller at 2:30 pm.
¶7 Detective Joel Clark testified that he downloaded information from Miller's cell phone as part of the investigation. He testified that on August 21 just before 10:00 a.m., there were two outgoing calls minutes apart from Miller's phone to "a phone number of (414) 299-5395, listed as 'Bishop' " in Miller's contacts. Both Miller and Sanchez testified that "Bishop" was Quinn. Clark also highlighted two calls that were "surrounding what was captured on video" at the Citgo gas station: an outgoing call from Miller to Bishop at 2:46 p.m., and an incoming call from Bishop to Miller at 2:58 p.m. Clark testified that Quinn had previously reported the 414 number to police "as being his," and that it showed up in the police department's database as Quinn's number.[2]
¶8 Ryan Lodygowski testified that he met Quinn in jail, where Quinn said he was there in connection with a reckless homicide involving heroin, mentioned the names "Abbey" and "Nadine," and told Lodygowski that he sold "Abbey some bad dope." Quinn said that he was upset with Miller because every time she "call[ed] him for some dope, she's always short money. And he was sick of it, so he sold her some bad dope." When Quinn found out that Rothering had died from the heroin, "he went on the run 'cuz he knew the police were going to be looking for him." Quinn told Lodygowski that he routinely deals heroin and bragged that "he had been selling dope in Sheboygan and he's never been caught."
¶9 Quinn testified that he knew Lodygowski from jail but that they never discussed this case. Quinn testified that he knew Miller from "Backpage" and that when he drove to the Citgo to meet her, he "was actually soliciting prostitution from Abbey." He said that when Miller got out of Sanchez's jeep and entered his car, he gave her $50 "to open up a '[B]ackpage' account." Quinn testified that he did not sell Miller any drugs and stated, "I don't sell drug[s]." When asked about the 414 number, Quinn said the phone did not belong to him and that he "never owned that phone." He testified that "Abbey and Monica sold [Rothering] the drugs before I got there," and that he "had no knowledge" of the heroin.
¶10 After closing arguments, the court found Quinn guilty. In "looking at the totality of the evidence," the court determined that on August 21 there were "two drug deals between" Miller and Quinn: one at the Cedar Grove truck stop and one at the Sheboygan Citgo station. The court found beyond a reasonable doubt "that the heroin bought by Abbey in Cedar Grove" from Quinn "was later sold to Nadine at the Citgo station, and that is the substance that killed her."
¶11 The court found that Quinn was Bishop and that he
lied when he said he wasn't Bishop. And he lied because he wanted to minimize the contacts with Abbey on August 21st. I'm convinced that he was in the vicinity of the Citgo station at approximately 2:46 on August 21st because he did follow the Sanchez vehicle from Cedar Grove.
The court found that Quinn's testimony was incredible because it was "not reasonable to believe that [Quinn] just happened to stumble upon Abbey at the Citgo station for the purpose of talking about a '[B]ackpage' ad," and found credible Miller's testimony that she and Quinn "were there for the purposes of completing a drug transaction."
¶12 Quinn filed a postconviction motion alleging that he was entitled to a new trial because he had newly discovered evidence that the 414 phone number was "listed to Mike Walls in Irving California," and that the number remained active. Alternatively, Quinn argued that his trial counsel was ineffective for not objecting to Detective Clark's testimony linking Quinn to the 414 number because "that information was never provided to trial counsel." Quinn further argued that even if the State did provide this information in discovery, trial counsel performed deficiently by not providing the information to Quinn when he was deciding whether to enter a plea. The court denied Quinn's postconviction motion, and Quinn appeals.
DISCUSSION
Quinn is not entitled to a new trial based on newly discovered evidence.
¶13 Quinn maintains that information showing that the 414 number for Bishop is listed under the name Mike Walls in Irving, California, constitutes newly discovered evidence entitling him to a new trial. A defendant seeking a new trial based on newly discovered evidence must prove by clear and convincing evidence all of the following: (1) the evidence was discovered after trial, (2) the defendant was not negligent in seeking the evidence, (3) the evidence is material to an issue in the case, and (4) the evidence is not merely cumulative to the evidence that was introduced at trial. State v. Avery , 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. If all four factors are proven, "then it must be determined whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." State v. Plude , 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42.
¶14 We conclude that there is no reasonable probability that the circuit court, as fact finder, would have had a reasonable doubt as to Quinn's guilt if it had known that the 414 phone was not registered in Quinn's name. There was a plethora of evidence presented in support of Quinn's guilt. Sanchez and Miller both testified that Sanchez drove Miller to purchase heroin from Quinn earlier in the day at a truck stop. They traveled to Sheboygan where Miller sold that heroin to Rothering in a Citgo parking lot. Their testimony was corroborated by the surveillance video showing Miller and Rothering meeting at the gas station, Rothering getting into Sanchez's jeep, Quinn's car arriving at the same time that Miller said she returned to buy more heroin from Quinn, and Miller getting into Quinn's car. Sanchez and Miller testified that Quinn was "Bishop." The phone calls between Miller and the 414 number were consistent with the testimony of Miller and Sanchez, and with the surveillance video.[3]
The circuit court properly denied Quinn's ineffective assistance of counsel claims without an evidentiary hearing.
¶15 Detective Clark testified that the 414 phone was "a number Mr. Quinn has reported as being his number to the police in the past." Quinn argues that trial counsel performed deficiently by not objecting to Clark's testimony because this information was not provided in discovery or, alternatively, if the State did provide this information in discovery, then trial counsel was ineffective for not sharing it with Quinn because he would have "likely" entered a plea and "ended up with a more favorable disposition." According to Quinn, the circuit court erred by denying these claims without an evidentiary hearing.
¶16 To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel performed deficiently and that the deficiency was prejudicial. Strickland v. Washington , 466 U.S. 668, 687 (1984). The circuit court is not required to hold an evidentiary Machner[4] hearing if the factual allegations of a defendant's motion are insufficient or conclusory, or if the record conclusively demonstrates that the defendant is not entitled to relief. State v. Bentley , 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996) (citation omitted). Whether a motion is sufficient to require an evidentiary hearing presents a question of law. State v. Allen , 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.
¶17 We agree with the State that Quinn's contradictory claims are without merit. Even if Quinn could show that trial counsel should have objected to Clark's testimony or told Quinn that his number in Sheboygan police records was the phone number for Bishop, the record conclusively demonstrates that Quinn was not prejudiced.
¶18 First, Clark's testimony linking the 414 number to Quinn was hardly dispositive in light of all the other evidence. Both Sanchez and Miller identified Quinn as Bishop and connected him to the 414 number. Apart from evidence concerning the 414 number, Sanchez and Miller testified that Quinn sold Miller the heroin she provided to Rothering. The surveillance video corroborated their testimony and rendered Quinn's version of events implausible. Further corroboration came through Lodygowski's testimony that Quinn told him details about the "bad dope" he sold to Miller, which ultimately caused Rothering's death. Because of the ample evidence implicating Quinn as the source of the fatal heroin, the record conclusively demonstrates that Quinn was not prejudiced by trial counsel's failure to object to Clark's testimony linking Quinn to the 414 number.
¶19 Second, assuming that evidence linking Quinn to the 414 number was provided in discovery, Quinn has not shown prejudice. We reject as speculative and conclusory Quinn's claim that had he known about police records connecting him to the 414 number, he "likely would have accepted the State's offer and thus ended up with a more favorable disposition." Quinn's postconviction motion does not contain any objective factual assertions in support of this claim.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable Terence T. Bourke presided at Quinn's court trial and sentencing. The Honorable Rebecca L. Persick entered the order denying postconviction relief.

The cell phone seized from Quinn at the time of his arrest was associated with a different area code and number. Detective Clark testified that the seized phone did not contain any information from before August 23, which indicated that Quinn had received a new cell phone on August 23.

In addition to underestimating the strength of the State's case, Quinn overstates the import of his alleged new evidence. In its decision denying postconviction relief, the circuit court stated "it is no surprise that the phone is registered to someone else because it's pretty common for that to happen" when the phone is being used to deal drugs. The court also deemed it significant that the phone number was "registered to a PO box rather than a home address" because that "makes it more likely in my opinion that it is not necessarily registered to a real person and even if it is, that doesn't mean Mr. Quinn wasn't using it." The circuit court's assessment is sound and further supports the conclusion that a fact finder presented with the new evidence would not have a reasonable doubt as to Quinn's guilt.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). A Machner hearing is "a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel." Id. at 804.